**ANGELA K. ZUGMAN**
California Bar No. 216374
LAW OFFICE OF ANGELA K. ZUGMAN
402 West Broadway, Suite 1130
San Diego, California 92101
Phone Number: (619) 787-5334
Fax Number: (619) 924-2201
Email: akzugman@gmail.com

**TIMOTHY A. SCOTT**
California Bar No. 215074
**NICOLAS O. JIMENEZ**
California Bar No. 295057
SCOTT TRIAL LAWYERS, APC
1350 Columbia St., Suite 600
San Diego, California 92101
Phone Number: (619) 794-0451
Fax Number: (619) 652-9964
Email: tas@scotttriallawyers.com
        noj@scotttriallawyers.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Estate of Mark Roshawn Adkins, by and through his successor-in-interest Collette Adkins; and Collette Adkins, individually and in her capacity as successor-in-interest,<br><br>Plaintiffs,<br><br>v.<br><br>County of San Diego; William Gore, individually and in his official capacity; SDCSD Corporal Armin Vianzon, individually and in his official capacity; SDCSD Deputy Jeffrey Perine, individually and in his official capacity; and Does 1-20, individually and in their official capacities, inclusive,<br><br>Defendants | Civil Action No.: 18CV0371 H (JMA)<br><br>FIRST AMENDED COMPLAINT FOR:<br><br>1. 42 U.S.C. § 1983: Excessive Force (Second Tasering)<br>2. 42 U.S.C. § 1983: Excessive Force (Third Tasering)<br>3. 42 U.S.C. § 1983: Excessive Force (Fourth Tasering)<br>4. *Monell*: Failure to train and/or supervise<br>5. Battery<br>6. Negligence<br>7. Negligent Training and Supervision<br>8. Cal. Civ. Code § 52.1 |

PLAINTIFFS' FIRST AMENDED COMPLAINT; ADKINS V. COUNTY OF SAN DIEGO, ET AL.

The Estate of Mark Roshawn Adkins, by and through his successor-in-interest Collette Adkins and Collette Adkins, individually and in her capacity as successor-in-interest, by and through their attorneys of record, state and allege as follows:

## I. INTRODUCTION

1. Sometime in the morning of May 20, 2017, Corporal Armin Vianzon and Deputy Jeffrey Perine from the Lemon Grove Substation of the San Diego County Sheriff's Department approached Mr. Mark Adkins on Lemon Grove Way in the City of Lemon Grove. During the encounter that followed, the deputies repeatedly deployed their electronic control devices ("Tasers") against Mr. Adkins, causing him to collapse on the ground. They continued to tase Mr. Adkins, repeatedly, as he lay on the ground with his hands in the air, pleading for them to stop.

The powerful electric currents delivered by the Taser caused Mr. Adkins to seize, spasm, convulse and groan in agony for an extended amount of time. During these repeated tasings, Mr. Adkins lay on the ground on his back with his hands in the air, posing no threat to the deputies or anyone else. The deputies knew and should have known that continuous and repeated deployment of a powerful weapon such as an electronic control device can result in serious bodily injury or death. After repeatedly tasing Mr. Adkins, the deputies pinned him down, handcuffed him, and called for paramedic assistance. Mr. Adkins soon became unresponsive from the repeated tasings and died shortly thereafter.

## II.  JURISDICTION

2.    This is a civil action where jurisdiction is founded on a federal question under 28 U.S.C. § 1331.

3.    Plaintiffs' claims arise in this judicial district where the events and omissions giving rise to this complaint occurred, namely the City of Lemon Grove in San Diego County, which is situated in the Southern District of California.

4.    Venue is proper in the United States District Court for the Southern District of California under 28 U.S.C. § 1391.

5.    Plaintiff Collette Adkins filed a timely tort claim against the County of San Diego and its employees under California Government Code Sections 910 *et seq.* on November 13, 2017.  The claim was denied on or about December 28, 2017.

## III.  PARTIES

6.    At all relevant times, Mark Roshawn Adkins ("Mr. Adkins") was an individual residing in the City of Lemon Grove, California.

7.    Plaintiff Collette Adkins ("Mrs. Adkins") is an individual residing in Lemon Grove, County of San Diego, California, and is the wife of Mark Roshawn Adkins. Mrs. Adkins sues both in her individual capacity and in a representative capacity as a successor-in-interest to her husband pursuant to California Code of Civil Procedure § 377.60.  She is the duly appointed successor-in-interest to the Estate of Mark Roshawn Adkins. *See* **Exhibit A** (Declaration of Collette Adkins).

8.    Defendant County of San Diego is a public entity, duly organized and existing under the laws of the State of California.

9.    Defendant William Gore was, at all relevant times, the Sheriff of the County of San Diego, the highest position in the San Diego County Sheriff's Department. As Sheriff, Defendant Gore was responsible for hiring, screening,

training, retention, supervision, discipline, counseling, and control of all San Diego County Sheriff's Deputies.

10.    Defendant Gore was personally aware of the history of misuse of the Taser in the Sheriff's Department, and he failed to take any action to prevent harm to the citizens of the County of San Diego.

11.    At all times mentioned, Defendant William Gore ("Gore") was the policy-maker for the San Diego Sheriff's Department (hereinafter "Sheriff's"). Gore is and was responsible for promulgation of the policies, procedures, and allowance of the practices and customs pursuant to which the acts of the Sheriff's Department alleged herein were committed. He also supervised and had control of deputies who are or were employed by the Sheriff's, who are under his command and who report to him, including the Defendants to be named.

12.    At all times mentioned, the individual defendants and Does 1-20 were San Diego Sheriff deputies and agents of Defendant County of San Diego.

13.    Defendant Corporal Armin Vianzon ("Vianzon"), at all times relevant herein, was a corporal with the San Diego County Sheriff's Department.  He was on duty near 8186 Lemon Grove Way, Unit C, in Lemon Grove City on May 20, 2017.  At all times mentioned herein, this defendant was an employee of the Sheriff's Department and acting in an official capacity and under color of law.

14.    Defendant Deputy Jeffrey Perine ("Perine"), at all times relevant herein, was a deputy with the San Diego Sheriff's Department.  He was on duty near 8186 Lemon Grove Way, Unit C, in Lemon Grove City on May 20, 2017.  At all times mentioned herein, this defendant was an employee of the Sheriff's Department and acting in an official capacity and under color of law.

15.    Plaintiffs are unaware of the true names and capacities of Does 1-20, inclusive, and/or unaware of the facts giving rise to their liability and will amend

this complaint once their identities have been ascertained as well as the facts giving rise to their liability.

16.     Defendants Does 1-20, individually and in their official capacities, at all times relevant herein, were deputies, officers and/or employees for the San Diego County Sheriff's Department, acting in their official capacity and under color of law. These defendants include deputies in supervisory positions that participated in the decision to arrest Mr. Adkins, in the supervision of the use of force by other deputies, and in reporting incidents of use of force to other employees within the Sheriff's Department.

## IV.  FACTS SUPPORTING CAUSES OF ACTIONS

17.     Plaintiffs reassert and re-allege and incorporate herein by reference each and every allegation contained in the preceding paragraphs.

18.     On May 20, 2017, at approximately 8:15 am, Vianzon and Perine responded to 911 calls regarding a person jumping over fences in the townhome community located at 8186 Lemon Grove Way.

19.      Mr. Adkins's mother, Betty Jean Butler, lived approximately a block away at 8220 Lemon Grove Way.

20.     At around 8:20 am, Vianzon and Perine encountered Mr. Adkins by the door of Unit C of the 8186 Lemon Grove Way townhouse community.

21.     Paul Brown, a witness who lived in the area, recorded the incident on his smart phone.  Defendants' repeated tasing of Mr. Adkins has been reported by numerous media sources including NBC San Diego, ABC 10 News, San Diego Union Tribune, Los Angeles Times, Fox 5 San Diego, San Diego Reader, San Diego's East County Magazine, La Mesa Patch, Anonymous News, Public Now, The Free Thought Project, The Root and YouTube.

22.     Between 8:26 am to 8:27 am, Mr. Adkins was tased at least four times. Both Vianzon and Perine deployed their Tasers on Mr. Adkins. Each time Mr.

Adkins was tased, a set of electrified barbs delivered an incapacitating surge of electrical current to his body.

23. Using a taser constitutes an "intermediate, significant level of force." The pain from being tased is felt throughout the body and is administered by effectively commandeering the victim's muscles and nerves. Beyond the experience of pain, tasers result in immobilization, disorientation, loss of balance, and weakness, even after the electrical current has ended. The experience of being shot with a taser is a "painful and frightening blow." (*See Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010).)

24. In the video taken by Mr. Brown, Mr. Adkins had just been tased and was seen lying on his back in a supine position with his legs out in front of him and both hands in the air. The back of his head was propped on the front door threshold of Unit C. Deputy Perine and Corporal Vianzon are both standing near Mr. Adkins.

25. Within seconds, Perine shouted "Put your hands behind your back!" immediately followed by Vianzon yelling, "You want to get tased again? Put your hands behind your back!" Perine then screamed "Roll on your stomach, roll on your stomach!"

26. Having just been tased with powerful pulses of electricity, inducing excruciating pain and severe muscle contractions, Mr. Adkins flimsily attempted to roll over to his right side but was unable to physically rotate his upper torso completely over onto his stomach. His hands were still in front of him. He remained on the ground as Perine and Vianzon continued to yell conflicting commands at him.

27. Vianzon then yelled "Roll over!" as Perine screamed "Roll over now!" Mr. Adkins responded by attempting to move his upper torso to his right side but was unable to completely roll over onto his stomach.

28.     Perine then hollered "Roll over! On your stomach - On your stomach!" followed by Vianzon yelling "On your stomach or I will zap you again!"

29.     Perine reached his hand towards an immobilized Mr. Adkins, screaming "Get on your stomach, on your stomach!" Mr. Adkins groaned, emitting guttural noises.

30.     While Perine and Vianzon handcuffed Mr. Adkins, another Sheriff deputy arrived at the scene.

31.     The third Sheriff deputy shouted "Give me your hand! Listen to what I'm saying, man!" Vianzon repeated his threat "Do you want to get tased again! Put your hands behind your back. Do it!" Immediately after this threat, Mr. Adkins started groaning in agony, his body limp on the ground.

32.     Soon after, a fourth Sheriff deputy arrives at the scene.

33.     Mr. Adkins's condition rapidly deteriorated while the four deputies watched him, restrained on the ground. The four deputies did not render any aid to Mr. Adkins while they waited for the paramedics to arrive.

34.     When the paramedics arrived around 8:34 am, Mr. Adkins was administered 5mg of Versed and then moved to the ambulance for transport.

35.     At around 8:48 am, Mr. Adkins was noted as pulseless and apneic.

36.     Mr. Adkins died before arriving at the hospital.

37.     Mr. Adkins had at least eight taser barbs in his skin.  He was tased at least four separate times by Defendants Vianzon and Perine.

38.     The Taser produces up to 50,000 volts of electricity that cause involuntary muscle contraction and temporarily incapacitate a subject.

39.     Defendants Vianzon and Perine knew or should have known that the Sheriff's policies only allow for Tasers to be "as a means of subduing and gaining control of a subject displaying assaultive behavior."

40. Defendants Vianzon and Perine knew or should have known that the Sheriff's policies restrict the Taser for use "under circumstances where it is deemed reasonable and necessary to minimize the potential for human injury."

41. Defendants Vianzon and Perine knew or should have known that pursuant to the Sheriff's policies, only <u>one</u> Taser "should be deployed against a single suspect/inmate."

42. Defendants Vianzon and Perine knew or should have known that the Sheriff's policies caution the use of Tasers since they "may have contributed to suspect/inmate deaths, so care must be exercised in their use."

43. Defendants Vianzon and Perine knew or should have known to evaluate whether the use of the Taser was appropriate based on the suspect's age or physical condition versus the level of threat posed by the suspect.

44. Defendants Vianzon and Perine knew or should have known to use the "shortest, objectively reasonable duration" of taser exposure and to reassess Mr. Adkins's behavior, reaction, and resistance after he was tased the first time and he was laying on the ground.

45. Both Vianzon and Perine deployed their Tasers on Mr. Adkins. Upon information and belief, Mr. Adkins was tased at least 2 to 3 additional times when he was laying on the ground in a supine position.

46. Mr. Adkins was a 54-year-old African-American man who appeared to be under the influence when he was tased repeatedly by Vianzon and Perine.

47. Defendants Vianzon and Perine knew or should have known that Sheriff's policies and prevailing Taser standards require that a subject be given a reasonable opportunity to comply before a Taser is deployed against that person. Moreover, Tasers are not to be used against suspects who are passively resisting law-enforcement commands.

8

PLAINTIFFS' FIRST AMENDED COMPLAINT; ADKINS V. COUNTY OF SAN DIEGO, ET AL.

48.    Defendant Sheriff's policies on the use of electronic control devices such as Tasers only authorize the use of such a device when a subject cannot be subdued through conventional and less deadly techniques.

49.    The high frequency of Taser use by Sheriff deputies, along with Defendants Vianzon and Perine's actions against Mr. Adkins, indicate that the Defendant County of San Diego has failed to provide adequate training to its employees on the proper use of electronic control devices.

50.    In May 2017, the County of San Diego paid $3 million in damages to a man who was critically injured after being repeatedly tased by a Sheriff's deputy at a parking lot in Vista on June 26, 2014. According to the complaint filed in court, the victim sustained permanent damage to multiple organs including his kidneys and brain. See *Torres v. Dylan Haddad et al.*; USDC Case No. 15cv01151-CAB - BLM.  Both of the man's legs below the knee and several fingers had to be amputated because of the trauma caused by the tasings.  This horrific incident and large settlement was evidently not enough to change the Sheriff's practices regarding the use of Tasers, however.

51.    Another wrongful-death lawsuit is pending against County of San Diego, Sheriff Gore and several Sheriff deputies/employees for the repeated tasing and beating of a mentally ill man, "Lucky" Phounsy. According to the complaint, Phounsy had been battling severe insomnia for several days. He began to have auditory hallucinations and paranoia. When medications did not work, his family called 911 in order to prevent Phounsy from any danger. The complaint alleges that on April 13, 2015, Sheriff's deputies arrived at Phounsy's Santee home, completely unprepared to deal with the situation. The deputies did nothing to de-escalate the situation and were aggressive and profane. Deputies used force to restrain Phounsy and tased him multiple times and struck him repeatedly with their batons. Once under control, deputies then "hogtied" Phounsy and put him in an

ambulance. He was then sedated and gagged. Phounsy's heart stopped beating before arriving at the hospital. He died a few days later. *See KJP v. County of San Diego*; USDC Case No. 15cv2692-H-MDD.

52. Mr. Adkins' manner of death was classified as a homicide.

53. After an investigation, the District Attorney's Office decided not to issue criminal charges against Corporal Vianzon and Deputy Perine.

54. The following wrongful conduct, among other things, all of which was conducted deliberately and with deliberate indifference to Mr. Adkin's health, safety and welfare, proximately caused this avoidable tragedy:

    a. The responding Sheriff's Department deputies used excessive force against Mr. Adkins, including the repeated tasing of Mr. Adkins while he was on the ground.

    b. The responding deputies acted pursuant to a policy, practice, and/or custom of infringing the rights of the general public through the use of force without legal justification.

    c. The Sheriff's Department failed to adequately train their personnel to appropriately and safely respond to and deal with situations involving elderly individuals under the influence.

    d. Plaintiffs are informed and believe that, when learning of the events giving rise to this claim, the County's final policymakers (including Sheriff Gore) ratified the acts of the County employees, including the responding Sheriff's Department deputies.

    e. Up through the time Mr. Adkins was transferred to the care of the paramedics, the responding deputies compromised Mr. Adkins's breathing (through the use of electrical weapons and physical restraint) to the point of inducing death by cardiac arrest.

PLAINTIFFS' FIRST AMENDED COMPLAINT; ADKINS V. COUNTY OF SAN DIEGO, ET AL.

55.     Plaintiffs are unaware of the circumstances surrounding the first tasering of Mr. Adkins, which was not captured on the video taken by Mr. Brown and will amend this complaint once these facts have been ascertained.

## V.   CAUSES OF ACTION

**CLAIM 1:  Violation of constitutional rights under color of law (42 U.S.C. § 1983: Use of excessive force – <u>Second</u> Tasering) [against Defendants Vianzon, Perine and Does 1-20]**

56.     Plaintiffs reassert and re-allege and incorporate herein by reference each and every allegation contained in the preceding paragraphs.

57.      Defendants Vianzon and Perine, during all times relevant herein were acting under color of state law.  These defendants are being sued in their individual capacities for the purposes of this cause of action.

58.     Mr. Adkins had a Fourth Amendment right to be free from being subjected to the use of excessive force by arresting officers.

59.     First, the use of a Taser involves the application of force. Second, each application of a Taser involves an additional use of force. Third, multiple applications of a Taser cannot be justified solely on the grounds that a suspect fails to comply with a command, absent other indications that the suspect is about to flee or poses an immediate threat to an officer. This is particularly true when more than one officer is present to assist in controlling a situation. Fourth, any decision to apply multiple applications of a Taser must take into consideration whether a suspect is capable of complying with an officer's commands.

60.     Upon information and belief, Defendants Vianzon and Perine tased Mr. Adkins a <u>second</u> time while he remained on the ground with his hands in front of him. When Mr. Adkins was tased this <u>second</u> time, he was not actively resisting

arrest and did not pose a threat to the deputies or anyone else. These defendants were not acting in good faith, were acting under color of law, and violated Mr. Adkins's Fourth Amendment rights to be free from excessive force.

61.     The conduct alleged herein caused Mr. Adkins to be deprived of his civil rights that are protected under the United States Constitution which has also legally, proximately, foreseeably and actually caused Plaintiffs to suffer damages in an amount to be proven at trial.

62.     The conduct alleged herein was done in deliberate or reckless disregard of Mr. Adkins's constitutionally protected rights, justifying the award of exemplary damages against Defendants in an amount according to proof at the time of trial in order to deter Defendants from engaging in similar conduct and to make an example by way of monetary punishment. Plaintiffs are also entitled to attorneys' fees and costs of suit herein.

**CLAIM 2:  Violation of constitutional rights under color of law (42 U.S.C. § 1983: Use of excessive force – <u>Third</u> Tasering) [against Defendants Vianzon, Perine and Does 1-20]**

63.     Plaintiffs reassert and re-allege and incorporate herein by reference each and every allegation contained in the preceding paragraphs.

64.      Defendants Vianzon and Perine, during all times relevant herein were acting under color of state law.  These defendants are being sued in their individual capacities for the purposes of this cause of action.

65.     Mr. Adkins had a Fourth Amendment right to be free from being subjected to the use of excessive force by arresting officers.

66.     First, the use of a Taser involves the application of force. Second, each application of a Taser involves an additional use of force. Third, multiple applications of a Taser cannot be justified solely on the grounds that a suspect fails

to comply with a command, absent other indications that the suspect is about to flee or poses an immediate threat to an officer. This is particularly true when more than one officer is present to assist in controlling a situation. Fourth, any decision to apply multiple applications of a Taser must take into consideration whether a suspect is capable of complying with an officer's commands.

67. Upon information and belief, Defendants Vianzon and Perine tased Mr. Adkins a <u>third</u> time while he remained lying supine on the ground with his hands in front of him. When Mr. Adkins was tased this <u>third</u> time, he was not actively resisting arrest and did not pose a threat to the deputies or anyone else. These defendants were not acting in good faith, were acting under color of law, and violated Mr. Adkins's Fourth Amendment rights to be free from excessive force.

68. The conduct alleged herein caused Mr. Adkins to be deprived of his civil rights that are protected under the United States Constitution which has also legally, proximately, foreseeably and actually caused Plaintiffs to suffer damages in an amount to be proven at trial.

69. The conduct alleged herein was done in deliberate or reckless disregard of Mr. Adkins's constitutionally protected rights, justifying the award of exemplary damages against Defendants in an amount according to proof at the time of trial in order to deter Defendants from engaging in similar conduct and to make an example by way of monetary punishment. Plaintiffs are also entitled to attorneys' fees and costs of suit herein.

**CLAIM 3:  Violation of constitutional rights under color of law (42 U.S.C. § 1983: Use of excessive force – <u>Fourth</u> Tasering) [against Defendants Vianzon, Perine and Does 1-20]**

70. Plaintiffs reassert and re-allege and incorporate herein by reference each and every allegation contained in the preceding paragraphs.

PLAINTIFFS' FIRST AMENDED COMPLAINT; ADKINS V. COUNTY OF SAN DIEGO, ET AL.

71.    Defendants Vianzon and Perine, during all times relevant herein were acting under color of state law.  These defendants are being sued in their individual capacities for the purposes of this cause of action.

72.    Mr. Adkins had a Fourth Amendment right to be free from being subjected to the use of excessive force by arresting officers.

73.    First, the use of a Taser involves the application of force. Second, each application of a Taser involves an additional use of force. Third, multiple applications of a Taser cannot be justified solely on the grounds that a suspect fails to comply with a command, absent other indications that the suspect is about to flee or poses an immediate threat to an officer. This is particularly true when more than one officer is present to assist in controlling a situation. Fourth, any decision to apply multiple applications of a Taser must take into consideration whether a suspect is capable of complying with an officer's commands.

74.    Upon information and belief, Defendants Vianzon and Perine tased Mr. Adkins a _fourth_ time while he remained lying supine on the ground with his hands in front of him. When Mr. Adkins was tased this _fourth_ time, he was not actively resisting arrest and did not pose a threat to the deputies or anyone else.  These defendants were not acting in good faith, were acting under color of law, and violated Mr. Adkins's Fourth Amendment rights to be free from excessive force.

75.    The conduct alleged herein caused Mr. Adkins to be deprived of his civil rights that are protected under the United States Constitution which has also legally, proximately, foreseeably and actually caused Plaintiffs to suffer damages in an amount to be proven at trial.

76.    The conduct alleged herein was done in deliberate or reckless disregard of Mr. Adkins's constitutionally protected rights, justifying the award of exemplary damages against Defendants in an amount according to proof at the time of trial in order to deter Defendants from engaging in similar conduct and to

make an example by way of monetary punishment. Plaintiffs are also entitled to attorneys' fees and costs of suit herein.

**CLAIM 4:   Failure to train and / or supervise (42 U.S.C. § 1983: *Monell*) [against County of San Diego, Gore and Supervisory Doe Defendants 11-20]**

77.   Plaintiffs reassert and re-allege and incorporate herein by reference each and every allegation contained in the preceding paragraphs.

78.   The County of San Diego, Gore and Supervisory Doe Defendants 11-20 are each liable for the deprivation of Mr. Adkins's constitutional rights under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), and its progeny, which hold that municipal entities may be held liable for violations of Constitutional rights committed by its employees if the violations arose from:

  a.  a widespread practice that, although not authorized by written law or express municipal policy, is "so permanent and well settled as to constitute a custom or usage" with the force of law;

  b.  the ratification of the illegal and unconstitutional conduct by an individual with final policy-making authority; and/or

  c.  a failure to adequately train municipal employees resulting in the deliberate indifference to the constitutional rights of citizens.

79.   Defendants County of San Diego, Supervisory Does 11-20, and Gore failed to provide adequate supervision and discipline to deputies that hold the power, authority, insignia, equipment and arms entrusted to them.

80.   Defendants County of San Diego, Supervisory Does 11-20, and Gore were aware of the widespread problems with the misuse of the Taser and the use of

excessive force within the Department. Despite this knowledge, Defendants took no action to supervise or discipline deputies.

81. Defendants County of San Diego, Supervisory Does 11-20 and Gore have a widespread history of ratifying deputy misconduct by failing to conduct appropriate investigations.

82. Defendants County of San Diego, Supervisory Does 11-20 and Gore refused to investigate misconduct and/or took no remedial steps or action against deputies.

83. There has been an official policy of acquiescence in the wrongful conduct. Defendants failed to promulgate corrective policies and regulations in the face of repeated Constitutional violations.

84. Defendants condoned and acquiesced in the abusive behavior of their subordinates by refusing to retrain them, discipline them, or correct their abusive behavior.

85. As referenced in paragraph 50 above, on June 26, 2014, Sheriff's deputies repeatedly tased a man, causing him to collapse and stop breathing. The man sustained permanent damage to multiple organs including his kidneys and brain. Both of his legs below the knee and several fingers had to be amputated because of the trauma caused by the tasings.

86. As outlined in paragraph 51 above, Sheriff's deputies repeatedly tased Lucky Phounsy, a mentally ill person experiencing hallucinations and paranoia. Phounsy died a few days after arriving at the hospital. (See *KJP v. County of San Diego*; USDC Case No. 15cv2692-H-MDD.)

87. Many other excessive force and civil rights lawsuits have been filed against San Diego Sheriff deputies, including the following:

PLAINTIFFS' FIRST AMENDED COMPLAINT; ADKINS V. COUNTY OF SAN DIEGO, ET AL.

a. <u>Deputy Jeffrey Jackson</u> (*See DeLeal v. Jackson*, 05cv0078-DMS (BLM); *Maxwell v. County of San Diego*,708 F.3d 1075 (9th Cir.2013); and USDC Case No. 07cv2385-JAH (JLB));

b. <u>Deputy Marshall Abbott</u>. *See Barman v. County of San Diego*, USDC Case No. 09cv2854-DMS (JMA); *Gordon v. Abbott*, San Diego Superior Court Case No. 37-2-12-00052251-CU-CR-NC.);

c. <u>Deputy Jason Philpot</u>. *See Darraj v. County of San Diego*, USDC Case No. 11cv1657-AJB (BGS).); and

d. <u>Sgt. Elizabeth Palmer</u>. *See Howard v. County of San Diego*, USDC Case No. 09CV2416-IEG (WVG); *Lacey v. Palmer, et al*., USDC Case No. 12cv0624-MMA (JMA); and *Newell v. County of San Diego*, et al., USDC Case No. 12cv1696-GPC (BLM).

88.     Defendant County of San Diego, as a matter of custom, practice, or policy, failed to institute, require, and enforce proper and adequate training and supervision for the use of Tasers by its employees, when the need for such training and supervision was obvious.  Defendants' failure to properly train and supervise its employees resulted in a violation of Mr. Adkins's Fourth Amendment rights.

89.     Defendant County of San Diego failed to train its employees on proper techniques for deploying a Taser, such as activating the device for only a brief interval—five seconds or less—before reevaluating whether further activation is necessary.

90.     Defendant County of San Diego failed to train its employees on only using a Taser against subjects that are actively resisting lawful authority.

91.     Defendant County of San Diego failed to train its employees that Tasers should not be deployed against subjects that are providing only passive resistance.

92.     Defendant County of San Diego failed to supervise its employees on their knowledge and adherence to the practices outlined above, and others, and on the proper use and deployment of Tasers generally as part of a response to a request for police assistance.

93.     Defendant County of San Diego's failure to properly train and supervise its officers, as a matter of policy, custom, and practice, was deliberately indifferent to Mr. Adkins's Fourth Amendment rights and done with conscious disregard for the dangers of harm and injury to him and others similarly situated.

94.     Defendant's failure to train and supervise its employees was the moving force behind the violation of Mr. Adkins's Fourth Amendment rights, and proximately, foreseeably, and actually caused him to suffer damages in an amount to be proven at trial.  The fact that Defendant County of San Diego recently paid $3 million in damages to a man who was critically injured after being repeatedly tased by a Sheriff's deputy underscores the deficient supervision and training by Defendants in this regard.

**CLAIM 5:  Battery**
        **[against Defendants Vianzon, Perine and Does 1-10]**

95.     Plaintiffs reassert and re-allege and incorporate herein by reference each and every allegation contained in the preceding paragraphs.

96.     Defendants Vianzon and Perine while working as Sheriff deputies and acting within the course and scope of their duties, intentionally used their Tasers against Mr. Adkins at least four times and otherwise used unreasonable and excessive force against him.  As a result of the actions of Defendants, Mr. Adkins suffered severe pain and suffering and ultimately died from his injuries.

Defendants' use of force while carrying out their duties as Sheriff deputies was an unreasonable and nonprivileged use of force.

97.     As a direct and proximate result of the conduct of Defendants Vianzon, Perine, and Does 1-10 as alleged above, Mr. Adkins sustained injuries and died from his injuries.

98.     Defendant County of San Diego is vicariously liable for the wrongful acts of Defendants Vianzon, Perine and Does 1-10 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

99.     The conduct of Defendants Vianzon, Perine, Does 1-10 was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiffs, entitling Plaintiff Collette Adkins, individually and as successor-in-interest to Mr. Adkins, to an award of exemplary and punitive damages as to Defendants.

100.    Plaintiff Collette Adkins brings this claim as a successor-in-interest to Mr. Adkins and seeks survival damages under this claim.

**CLAIM 6:  Negligence**
          **[against all Defendants]**

101.    Plaintiffs reassert and re-allege and incorporate herein by reference each and every allegation contained in the preceding paragraphs.

102.    Defendants, including the Does 1-20 who will be named in this case, have a duty to use reasonable care to prevent harm or injury to others.  This duty includes using appropriate tactics, giving appropriate, intelligible and non-

conflicting commands, giving warnings, and not using any force unless necessary, using less than lethal options, and only using deadly force as a last resort.

103.    Defendants breached this duty of care.  Upon information and belief, the actions and inactions of Defendants were negligent and reckless, including but not limited to:

      a.   the failure to properly and adequately assess the need to use force or deadly force against Mr. Adkins;

      b.   the negligent tactics and handling of the situation with Mr. Adkins, including negligence occurring immediately prior to the use of force, and negligent tactics in handling a situation with an elderly person under the influence;

      c.   the negligent use of force, including deadly force, against Mr. Adkins;

      d.   the failure to properly train and supervise employees, both professional and non-professional, including Defendants Vianzon, Perine and Does 1-10;

      e.   the failure to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of Mr. Adkins;

      f.   the negligent handling of evidence and witnesses; and

      g.   the negligent communication of information during the incident.

104.    County of San Diego is vicariously liable for the wrongful acts of Defendants pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

105. Defendants County of San Diego and Gore failed to act with ordinary care in failing to properly train and supervise their deputies with respect to arrests and the use of force.

106. As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, Mr. Adkins was caused to suffer severe pain and suffering and ultimately died.. Plaintiff Collette Adkins brings this claim as successor-in-interest to Mr. Adkins and seeks survival damages under this claim.

### CLAIM 7: Negligent Training and Supervision
### [against Gore, and Supervisory Doe Defendants 11-20]

107. Plaintiffs reassert and re-allege and incorporate herein by reference each and every allegation contained in the preceding paragraphs.

108. Officials of the San Diego Sheriff's Department, acting under color of law, have subjected Mr. Adkins and other persons similarly situated to a pattern of conduct consisting of continuing, widespread and persistence pattern of unconstitutional misconduct.

109. The County of San Diego, as a matter of custom, practice and policy, failed to maintain adequate and proper training as to the constitutional rights of citizens and arrestees; to prevent the consistent and systematic use of excessive force; and to prevent extra judicial punishment by deputies.

110. Defendant County of San Diego had a duty to use reasonable care in the training and supervision its employees, including Defendants Vianzon and Perine. Defendant County of San Diego had a duty to train its officers in the proper means of responding to requests for police assistance. Defendant County of San Diego had a duty to properly train its officers to avoid exposing citizens to the risk of excessive force. Defendant County of San Diego had a duty to properly train its

officers in the use of Tasers and other potentially lethal devices. Defendant County of San Diego had a duty to ensure that incidents of use of force by its employees are properly investigated and supervised.

111. Defendants, including Sheriff Gore, was aware of the misuse of the Taser within the Department and the need to retrain Sheriff deputies on the proper use of the Taser. Defendants failed to train despite their knowledge of the widespread misuse of the Taser.

112. Defendants, with deliberate indifference, breached their duty of care and caused harm to Plaintiffs, including physical pain and suffering, terror, mental anguish, humiliation, degradation, damage to reputation, and financial loss.

113. As a direct, proximate, and foreseeable result of this Defendants' breach of its duty of care, Plaintiffs suffered damages in an amount according to proof at the time of trial.

### CLAIM 8:   Bane Act (Cal. Civ. Code §52.1)
### [against all Defendants]

114. Plaintiffs reallege and incorporate herein by reference each and every allegation contained in the preceding paragraphs.

115. California Civil Code, Section 52.1 (the Bane Act), prohibits any person from using violent acts or threatening to commit violent acts in retaliation against another person for exercising that person's constitutional rights.

116. On information and belief, Defendants Vianzon, Perine and Does 1-20, inclusive, while working for the County of San Diego and acting within the course and scope of their duties, intentionally committed and attempted to commit acts of violence against Mr. Adkins, including using excessive force by tasing him multiple times without justification or excuse, by integrally participating and failing to intervene in the above violence.

117.   When Defendants repeatedly tased Mr. Adkin, they interfered with Plaintiffs' civil rights to be free from unreasonable searches and seizures, to due process, to equal protection of the laws, to be free from state actions that shock the conscience, and to life, liberty, and property.

118.   On information and belief, Defendants intentionally and spitefully committed the above acts to discourage Plaintiffs from exercising their civil rights, to retaliate against them for invoking such rights, or to prevent them from exercising such rights, which they were fully entitled to enjoy.

119.   On information and belief, Plaintiffs reasonably believed and understood that the violent acts committed by Defendants were intended to discourage them from exercising the above civil rights, to retaliate against them for invoking such rights, or to prevent them from exercising such rights.

120.   The conduct of Defendants was a substantial factor in causing Plaintiffs' harms, losses, injuries, and damages.

121.   Defendant County of San Diego is vicariously liable for the wrongful acts of Defendants Vianzon, Perine and Does 1-20, inclusive, pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

122.   Plaintiffs are also entitled to the statutory civil penalties set forth in the Civil Code Section 52, attorneys' fees and costs of suit incurred herein.

123.    The conduct of Defendants also amounts to oppression, fraud or malice within the meaning of Civil Code Section 3294 *et seq*. and punitive damages should be assessed against each non-municipal defendant for the purpose of punishment and for the sake of example.

PLAINTIFFS' FIRST AMENDED COMPLAINT; ADKINS V. COUNTY OF SAN DIEGO, ET AL.

## VI. RELIEF REQUESTED

1. General and compensatory damages in an amount according to proof;

2. Punitive and exemplary damages;

3. Civil penalties as provided by law;

4. Declaratory and injunctive relief remedying the continued policies, customs and practices governing how the San Diego Sheriff's Department uses Tasers and similar devices in responding to requests for police assistance;

5. Attorney fees under 42 U.S.C. § 1983 and Cal. Civ. Code §52.1;

6. Costs of suit;

7. Legal interest on all damages awards from the date of judicial demand until paid;

8. And for such other and further relief as the Court may deem proper.

Respectfully submitted,

Dated:        September 14, 2018        */s/Angela K. Zugman*
                                        */s/ Timothy A. Scott*
                                        ANGELA K. ZUGMAN
                                        TIMOTHY A. SCOTT
                                        NICOLAS O. JIMENEZ
                                        Attorney for Plaintiffs

# Exhibit A

**ANGELA K. ZUGMAN**
California Bar No. 216374
LAW OFFICE OF ANGELA K. ZUGMAN
1010 2nd Avenue, Suite 1800
San Diego, California 92101
Phone Number: (619) 787-5334
Fax Number: (619) 924-2201
Email: akzugman@gmail.com

**TIMOTHY A. SCOTT**
California Bar No. 215074
**NICOLAS O. JIMENEZ**
California Bar No. 295057
SCOTT TRIAL LAWYERS, APC
1350 Columbia St., Suite 600
San Diego, California 92101
Phone Number: (619) 794-0451
Fax Number: (619) 652-9964
Email: tas@scotttriallawyers.com
        noj@scotttriallawyers.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTIRCT OF CALIFORNIA

| | |
|---|---|
| Estate of Mark Roshawn Adkins, by and through his successor-in-interest Collette Adkins; and Collette Adkins, individually and in her capacity as successor-in-interest, <br><br> Plaintiffs, <br><br> v. <br><br> County of San Diego; William Gore, individually and in his official capacity; and Does 1-20, individually and in their official capacities, inclusive, <br><br> Defendants. | Civil Action No.: '18CV0371 H    JMA <br><br> **DECLARATION OF COLLETTE ADKINS** |

I, Collette Adkins, declare under penalty of perjury as follows:

1. I am over the age of 18 and am competent to testify in this matter.

2. I am the wife of Mark Roshawn Adkins, who died on May 20, 2017, in Lemon Grove, County of San Diego, California.

3. No proceeding is now pending in the State of California for the administration of the Estate of Mark Roshawn Adkins.

4. I am the successor in interest to Mark Roshawn Adkins, as defined in Section 377.11 of the California Code of Civil Procedure, and succeed to his interest in the above-captioned action under California Probate Code § 6402(b).

5. No other person has a superior right to commence the above-captioned action or to be substituted for Mark Roshawn Adkins in the above-captioned action.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration is executed on February 14, 2018 at San Diego, California.

Collette Adkins

DECLARATION OF COLLETTE ADKINS; ADKINS V. COUNTY OF SAN DIEGO, ET AL.