UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF MARK ROSHAWN ADKINS, by and through his successor-in-interest Collette Adkins; COLLETTE ADKINS, individually and in her capacity as successor-in-interest,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO; et al.,<br><br>Defendants. | Case No.: 18-cv-00371-H-MDD<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**(2) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Doc. Nos. 49, 52] |

On May 6, 2019, Plaintiff Collette Adkins ("Plaintiff") filed a motion for partial summary judgment, (Doc. No. 49) and Defendants County of San Diego, William Gore, Armin Vianson, and Jeffrey Perine (collectively, "Defendants") filed a motion for summary judgment or in the alternative partial summary judgment, (Doc. No. 52). On May

1

20, 2019, the parties filed their respective oppositions. (Doc. Nos. 59, 61.) On May 24, 2019, the parties filed their respective replies. (Doc. Nos. 69, 71.) On June 3, 2019, the Court held a hearing on the motions. (Doc. No. 73.) Timothy A. Scott appeared on behalf of Plaintiff and Melissa Maria Holmes appeared on behalf of Defendants. (<u>Id.</u>) For the reasons below, the Court grants in part and denies in part Defendants' motion for summary judgment and denies Plaintiff's motion for partial summary judgment.

## Background

### I. Factual Background

This suit arises out of Mark Roshawn Adkins's ("Adkins") death in Lemon Grove, California on May 20, 2017. That morning, at approximately 8:16 a.m., Corporal Armin Vianzon and Deputy Jeffrey Perine of the San Diego County Sheriff's Department responded to a trespassing call. (Doc. Nos. 52-2, Ex. A Perine Depo. at 138:3–18, 145:3–6.; 52-8 ¶ 2, 3; 52-9 ¶ 2, 4; 49-2 at 9.) En route, the officers received updates that the trespassing individual was scaling walls, sweating profusely, possibly under the influence of PCP, and was pulling on door handles. (Doc. No. 52-2, Ex. A Perine Depo. at 138:9-25, 139:20–140:8.) At the scene, the officers encountered Adkins by the door of a townhome, near his mother's residence. (Doc. Nos. 52-2, Ex. A Perine Depo. at 148:2–7; 49-2 at 8–9.) The door was on the second level of the complex, on an elevated patio, and Deputy Perine was concerned that Adkins might try to take one of the officers over the balcony. (Doc. Nos. 52-2, Ex. A Perine Depo. at 168:16–169:17; 170:1–171:9; 52-9 ¶ 4.) Adkins was sweating profusely, breathing heavily, and flexing his arms and muscles. (Doc. No. 52-9 ¶ 6.) The officers drew their tasers and ordered Adkins to get on the ground multiple times. (Doc. No. 52-9 ¶ 11, 13.) Adkins ignored their commands, growled intensely at them, intermittently clenched his fists, and knelt down and assumed a charging position against Deputy Perine. (Doc. Nos. 52-2 at 168:16–169:19; 52-9 ¶ 12.) Adkins stood up and took a step toward Deputy Perine. (Doc. Nos. 52-2 at 169:10–17; 52-9 ¶ 13.) At this point, Deputy Perine deployed his electronic control device ("taser"). (Doc. Nos. 52-2 at 169:10–19; 52-9 ¶ 13.)

1  During the encounter that followed, each officer deployed his taser twice against Adkins. (Doc. Nos. 52-8 at 2; 52-9 at 4; 49-2 at 14–15.) Although the parties dispute the effect of Deputy Perine's two deployments and Corporal Vianzon's first deployment, Corporal Vianzon's second deployment was effective enough to cause Adkins to lower to the ground. (Doc. No. 52-9 at 4.) The officers repeatedly ordered him to roll over onto his stomach and put both hands behind his back, but Adkins did not comply. (Doc. No. 52-9 ¶ 18; see Doc. No. 49-3 Exhibit N.) Deputy Perine attempted to handcuff Adkins, who struggled. (Doc. Nos. 52-2 at 52:10–53:23; 52-9 at 4–5; see 49-3 Exhibit N.) Two additional officers arrived on scene before Adkins was handcuffed, one of whom assisted in restraining Adkins's legs and attempting to secure Adkins's right arm from under Adkins's body. (Doc. Nos. 52-9 ¶¶ 20, 24; see 49-3 Exhibit N.) Corporal Vianzon cycled his taser multiple times before the officers were able to handcuff Adkins. (Doc. Nos. 52-9 at 4–5; 52-9 ¶ 22; see 49-3 Exhibit N.)

Once Adkins was handcuffed, Corporal Vinazon immediately requested paramedics. (Doc. No. 52-9 ¶ 23.) At approximately 8:48 a.m., Adkins became pulseless and cardiopulmonary resuscitation was initiated. (Doc. No. 52-2 at 130, Exhibit G.) He was transported by ambulance to a hospital where he was pronounced dead at 1:00 p.m. (Id.) Plaintiff does not contend that Adkins's death was caused by the tasings. (See Doc. No. 51-1 at 9.)

## Discussion

### I. Legal Standards for Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 if the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d 1025, 1031 (9th Cir. 2010). "A genuine issue of material fact exists when the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." <u>Fortune Dynamic</u>, 618 F.3d at 1031 (internal quotation marks and citations omitted); <u>accord Anderson</u>, 477 U.S. at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987).

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case that the nonmoving party bears the burden of proving at trial. <u>Id.</u> at 322–23; <u>Jones v. Williams</u>, 791 F.3d 1023, 1030 (9th Cir. 2015). Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" <u>T.W. Elec. Serv.</u>, 809 F.2d at 630 (quoting former Fed. R. Civ. P. 56(e)); <u>accord</u> <u>Horphag Research Ltd. v. Garcia</u>, 475 F.3d 1029, 1035 (9th Cir. 2007). To carry this burden, the non-moving party "may not rest upon mere allegation or denials of his pleadings." <u>Anderson</u>, 477 U.S. at 256; <u>see also</u> <u>Behrens v. Pelletier</u>, 516 U.S. 299, 309 (1996) ("On summary judgment, . . . the plaintiff can no longer rest on the pleadings."). Rather, the nonmoving party "must present affirmative evidence . . . from which a jury might return a verdict in his favor." <u>Anderson</u>, 477 U.S. at 256. Questions of law are well-suited to disposition via summary judgment. <u>See, e.g.</u>, <u>Pulte Home Corp. v. Am. Safety Indem. Co.</u>, 264 F. Supp. 3d 1073, 1077 (S.D. Cal. 2017).

When ruling on a summary judgment motion, the Court must view the facts and draw all reasonable inferences in the light most favorable to the non-moving party. <u>Scott v. Harris</u>, 550 U.S. 372, 378 (2007). The Court should not weigh the evidence or make credibility determinations. <u>See</u> <u>Anderson</u>, 477 U.S. at 255. "The evidence of the non-movant is to be believed." <u>Id.</u> Further, the Court may consider other materials in the record

4

18-cv-00371-H-MDD

not cited to by the parties, but it is not required to do so. See Fed. R. Civ. P. 56(c)(3); Simmons v. Navajo Cnty., 609 F.3d 1011, 1017 (9th Cir. 2010).

## II. Analysis

### A. Qualified Immunity

Defendants argue that officers Vianzon and Perine are entitled to qualified immunity. (Doc. No. 52-1 at 14–17.) Plaintiff argues that the officers' actions violated clearly established law. (Doc. No. 61 at 18–20.) "Qualified immunity shields a police officer from suit under § 1983 unless (1) the officer violated a statutory or constitutional right, and (2) the right was clearly established at the time of the challenged conduct." Thomas v. Dillard, 818 F.3d 864, 874 (9th Cir. 2016) (citations omitted). When considering these two prongs, "courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." Tolan v. Cotton, 572 U.S. 650, 656 (2014). The Court has discretion to determine which of these two prongs to address first. Pearson v. Callahan, 555 U.S. 223, 236 (2009); Mattos v. Agarano, 661 F.3d 433, 440 (9th Cir. 2011).

#### 1. Whether Adkins's Constitutional Rights Were Violated

The Court first considers whether the officers violated Adkins's Fourth Amendment right to be free from excessive force. "Objectively unreasonable uses of force violate the Fourth Amendment's guarantee against unreasonable seizures." Lowry v. City of San Diego, 818 F.3d 840, 847 (9th Cir. 2016). The reasonableness of a use of force is determined based on whether the defendant's actions were "objectively reasonable" in light of all facts and circumstances. Graham v. Connor, 490 U.S. 386, 397 (1989). "The operative question in excessive force cases is whether the totality of the circumstances justifies a particular sort of search or seizure." Cty. of Los Angeles, Calif. v. Mendez, 137 S. Ct. 1539, 1546 (2017) (quoting Tennessee v. Garner, 471 U.S. 1, 8–9 (1985)). The reasonableness of a use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001) (quoting Graham, 490 U.S. at 396). "Determining whether the force used to effect a particular seizure is reasonable under the

5

18-cv-00371-H-MDD

Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham, 490 U.S. at 396 (internal quotation marks omitted). The Ninth Circuit has "held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury." Liston v. Cty. of Riverside, 120 F.3d 965, 976 n.10 (9th Cir. 1997).

First, the Court considers the gravity of the intrusion. "[T]he gravity of the particular intrusion on Fourth Amendment interests" is evaluated by assessing "the type and amount of force inflicted." Miller v. Clark Cty., 340 F.3d 959, 964 (9th Cir. 2003). Here, the discharge of a taser in dart mode "involve[s] an intermediate level of force with 'physiological effects, [ ] high levels of pain, and foreseeable risk of physical injury.'" Gravelet-Blondin v. Shelton, 728 F.3d 1086, 1091 (9th Cir. 2013) (quoting Bryan v. MacPherson, 630 F.3d 805, 825 (9th Cir. 2010)).

Next, the Court considers the government interest at stake. "[T]he importance of the government interests at stake" is evaluated according to "(1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." Miller, 340 F.3d at 964 (citing Graham, 490 U.S. at 396). Additionally, "[i]n evaluating objective reasonableness, [a court] often must look beyond Graham's enumerated factors and consider other elements relevant to the totality of the circumstances." Gravelet-Blondin, 728 F.3d at 1092.

With respect to the severity of the crime at issue, the officers were called to the scene for a trespassing violation, with the possibility that Adkins's was attempting to enter homes. (Doc. Nos. 52-2, Ex. A Perine Depo. at 138:3–18, 141:20–142:6, 145:3–6.; 52-8 ¶ 2, 3; 52-9 ¶ 2, 4; 49-2 at 9.) Trespassing is a misdemeanor. See Cal. Penal Code § 602.

With respect to whether the suspect posed an immediate threat to the safety of the officers or others, the Court concludes that triable issues of fact remain. Plaintiff argues that once Adkins was on the ground and outnumbered by police officers, subsequent tasing cycles constituted excessive force. (Doc. No. 49-1 at 15–17.) Defendants argue that

Adkins continued to fight the deputies, attempting to kick and stand up, and he pulled his hands away from the deputies creating a security threat. (Doc. No. 52-1 at 10–11.) Given the factual disputes, whether Adkins posed an immediate threat to the deputies is a question of fact for the jury.

With respect to whether Adkins was resisting arrest, the Court concludes that triable issues of fact remain. Plaintiffs argue that, although Adkins was resisting arrest, he was not exhibiting assaultive behavior that would have injured the officers. (See Doc. No. 49-1 at 17.) Defendants argue that Adkins was resisting arrest and potentially attempting to escape. (See Doc. No. 52-2 at 10–11.) Given the factual disputes, the extent to which Adkins was resisting arrest or attempting to escape is a question for the jury. See Mattos v. Agarano, 661 F.3d 433, 445 (9th Cir. 2011) (noting that, although the plaintiff was resisting arrest, "[her] resistance did not involve any violent actions towards the officers").

Based on the foregoing, the Court concludes that triable issues of fact remain as to the issue of whether Adkins's Fourth Amendment rights against excessive force were violated once he was on the ground and Corporal Vianzon continued to cycle his taser. Accordingly, the Court denies both Defendants' and Plaintiff's motion for summary judgment on the issue of whether Corporal Vianzon's use of the taser was objectively reasonable under the circumstances.

However, the Court concludes that Deputy Perine is entitled to qualified immunity. When Corporal Vianzon used the taser while Adkins was on the ground, Deputy Perine was still attempting to handcuff Adkins. (Doc. Nos. 52-9 at 4–5; 52-9 ¶ 22; see 49-3 Exhibit N.) The Court concludes that, even assuming that Corporal Vianzon's use of the taser violated Adkins' Fourth Amendment rights, Deputy Perine did not have a realistic opportunity to intervene given that the alleged violation occurred within a matter of seconds and while Deputy Perine was occupied with handcuffing Adkins, who himself was struggling against the arrest. See Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000) ("[O]fficers can be held liable for failing to intercede only if they had an opportunity to intercede.") Accordingly, the Court concludes that Deputy Perine is entitled to qualified

immunity and grants Defendants' motion for summary judgment with respect to Plaintiff's § 1983 claim against Deputy Perine.

### 2. Clearly Established Law

The Court next considers whether the asserted constitutional right was clearly established at the time of the officers' alleged misconduct. To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what [the official] is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition," especially in the Fourth Amendment context, where "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." Id. (citations and internal quotation marks omitted). Put another way, only the "plainly incompetent" officer will not enjoy qualified immunity. Id. (citation omitted).

The Supreme Court and the Ninth Circuit have stressed that clearly established law should not be defined at a high level of generality. See White v. Pauly, 137 S. Ct. 548 (2017); S.B. v. Cty. of San Diego, 864 F.3d 1010 (9th Cir. 2017). In S.B., the district court determined that inconsistencies in officer testimony created a triable dispute over whether the officer's conduct violated clearly established law, but the court did not identify a clear precedent barring the officer from using deadly force under the circumstances. 864 F.3d at 1013. The Ninth Circuit reversed the district court, explaining that the court must "identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment." Id. at 1015 (quoting White, 137 S. Ct. at 552). The Ninth Circuit could not find such a case, and the court determined that the case did not involve an "obvious" or "run-of-the-mill" constitutional violation. Id. at 1016. The officer was therefore entitled to qualified immunity. Id. at 1016–17.

Turning to the specific issues in this case, the Ninth Circuit has provided guidance on the use of a taser. For example, in Thomas v. Dillard, 818 F.3d 864 (9th Cir. 2016), an officer responded to a report of domestic violence at a college campus. Id. at 872. There,

8

the officer encountered a man, Thomas, and a woman in the location of the reported incident. Id. Thomas was wearing clothes described in the report. Id. He responded to the officer's questions, but he withheld his consent to be searched and he backed away to avoid being grabbed by the officer. Id. at 873. The officer pulled his taser. Id. Another officer arrived on scene with his pistol drawn and ordered Thomas to put his hands in the air. Id. Thomas complied. Id. The officer with the taser ordered Thomas to drop to his knees or he would tase him. Id. Thomas did not comply, and the officer tased him. Id. In considering Thomas's claim that the officer used excessive force, the Ninth Circuit noted that a taser in dart mode constitutes intermediate force, that the alleged altercation between the couple was not particularly severe, that Thomas did not pose a threat to himself or anyone else, and that Thomas gave no indication that he would flee and his resistance was mostly passive. Id. at 890. On these facts, the Ninth Circuit concluded that the officer's use of the taser in dart mode violated Thomas's Fourth Amendment rights against excessive force. Id. at 891. In addition, the Ninth Circuit found that the officer was entitled to qualified immunity on the grounds that at the time of the incident there was not clearly established law on the use of a taser in the circumstances of the case. Id.

After the incident in this case, the Ninth Circuit decided Isayeva v. Sacramento Sheriff's Dep't, 872 F.3d 938 (9th Cir. 2017). In Isayeva, two deputies responded to a domestic disturbance call involving an individual, Tereschenko, who had mental health issues. 872 F.3d at 948. The deputies learned that Tereschenko was unarmed, but that he might have been under the influence of methamphetamines, and that he had been hearing voices that told him to kill others. Id. Tereschenko's appearance and mannarisms confirmed that he was probably high on methamphetamines or other drugs. Id. He was larger than both deputies at over six feet tall and more than 250 pounds. Id. He asked the deputies for help, rambled, and mentioned he was schizophrenic. Id. Although he was initially compliant, he later became agitated and told the deputies that they would have to shoot or kill him. Id. At one point, when Tereschenko appeared to be reaching for something, one of the deputies grabbed one of his arms, while the other deputy grabbed his

9

other arm. Id. The three struggled, and Tereschenko tossed the deputies around. Id. One of the deputies then tased Tereschenko in drive-stun mode for a five-second cycle. Id.

The Ninth Circuit determined that the deputies were entitled to qualified immunity with respect to the use of the taser as "Tereschenko did not have a clearly established right violated." Id. at 950. In reaching this decision, the Ninth Circuit reviewed the clearly established law through February 18, 2013 on excessive force claims involving the use of a taser:

> As of February 18, 2013 . . . three key published cases from the Ninth Circuit established when the use of a taser was unreasonable under the Fourth Amendment.
>
> The first is Bryan v. MacPherson. The plaintiff in Bryan was a possibly-mentally-ill twenty-one-year-old male pulled over for failing to wear his seatbelt. Id. at 822, 829. After not hearing the officer's command to stay in his vehicle, the plaintiff exited his car. Id. at 822. He was visibly upset, shouting gibberish and cursing, but made no threatening statements. Id. Without warning, the officer tased the plaintiff once in "dart mode," causing the plaintiff to lose muscle control and fall face first to the pavement, knocking out four teeth. Id. at 822–24. Construing the facts in the light most favorable to the plaintiff, at the time of the tasing he was standing fifteen to twenty-five feet away from the officer, facing the other direction, and not moving. Id. at 823. Viewing the facts in that manner, we held that the tasing violated the Fourth Amendment. Id. at 833. . . .
>
> The next two cases, Brooks v. City of Seattle and Mattos v. Agarano, were heard together as consolidated appeals before an en banc panel of this court. See Mattos, 661 F.3d 433. In Brooks, the plaintiff was a seven-months-pregnant woman who was pulled over for speeding. Id. at 436. After she refused to sign a traffic citation and to exit her car, one of three officers present held up a taser and asked if the plaintiff knew what it was. Id. at 437. The plaintiff indicated that she did not. Id. Another officer grabbed the plaintiff's arms and tried to remove her from the vehicle, but the plaintiff "stiffened her body and clutched the steering wheel." Id. The first officer then tased the plaintiff in drive-stun mode three separate times within less than a minute. Id.
>
> In Mattos, the plaintiff was a woman involved in a domestic dispute with her husband. Id. at 438. Three officers responded, and the plaintiff's husband, who was large and smelled of alcohol, began yelling at them. Id. at

> 438–39. One officer tried to arrest the husband, but the plaintiff stood between the officer and her husband and did not move. Id. at 439. As the officer moved forward, the plaintiff extended her arms to prevent him from running into her chest. Id. He asked, "Are you touching an officer?" Id. The plaintiff tried to calm the officers and her husband down so as not to wake her sleeping children, but then one of the officers, without warning, tased the plaintiff once in dart mode. Id.
>
> In both Brooks and Mattos, we held that when the record was construed in the plaintiff's favor the use of the taser was unreasonable under the Fourth Amendment. Id. at 452.

Id. at 948–49. The Ninth Circuit determined that none of its three key cases provided sufficient guidance to provide clearly established law under the circumstances of the case. See id. at 950.[1]

Here, Defendants may be correct that no specific case matches the facts of this case on all fours. Nonetheless, the Ninth Circuit cases provide significant guidance on the use of tasers and questions of fact remain as to whether Adkins posed a threat to the officers and to what extent he was resisting arrest. Additionally, the Supreme Court has held that excessive force cases require a consideration of the totality of facts and circumstances surrounding an incident. Graham, 490 U.S. at 397. Accordingly, given the remaining factual disputes, the Court denies Defendants' motion for summary judgment with respect to Plaintiff's § 1983 claim against Corporal Vianzon.

---

[1] Plaintiff relies on Gravelet-Blondin for the proposition that the Ninth Circuit adopted a district court decision from the Western District of Washington, Beaver v. City of Fed. Way, 507 F.Supp.2d 1137 (W.D. Wash. 2007). (Doc. No. 61 at 18–21.) Gravelet-Blondin cited to Beaver for the proposition that the use of tasers constitutes significant force. 728 F.3d at 1095–96. However, Defendants do not dispute that the use of a taser in dart mode constitutes intermediate force. Thus, the Court concludes that Plaintiff's citations to Gravelet-Blondin are not applicable to the issues raised in Defendants' motion for summary judgment. Moreover, with respect to Beaver, the Court may "look to whatever decisional law is available to ascertain whether the law is clearly established for qualified immunity purposes." Boyd v. Benton Cty., 374 F.3d 773, 781 (9th Cir. 2004) (internal citations and quotations omitted). However, given the binding precedent discussed above and that Plaintiff does not provide other examples of decisional law in addition to Beaver, the Court does not find that Beaver represents clearly established law. See, e.g., Ciampi v. City of Palo Alto, 790 F. Supp. 2d 1077, 1103 (N.D. Cal. 2011) (citing to Beaver, among other cases, and noting that courts "vary in their assessment of . . . [the] reasonableness of applying [taser] force to subdue an unrestrained suspect").

**B. Monell Claim**

Defendants argue that Plaintiff's Monell theories fail as a matter of law. (Doc. No. 52-1 at 19–24.) Plaintiff opposes. (Doc. No. 61 at 20–22.) Municipalities may not be held vicariously liable under § 1983 for the conduct of their employees. Chudacoff v. University Medical Center of Southern Nevada, 649 F.3d 1143, 1151 (9th Cir. 2011) (citing Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658, 692 (1978)). A municipality will be liable "under § 1983 only if a plaintiff shows that his constitutional injury was caused by employees acting pursuant to an official policy or 'longstanding practice or custom,' or that the injury was caused or ratified by an individual with 'final policy-making authority.'" Id. (citing Villegas v. Gilroy Garlic Festival Ass'n, 541 F.3d 950, 964 (9th Cir. 2008)). One way for a § 1983 plaintiff to establish municipal liability is to show that the municipality's failure to train its employees amounted to a deliberate policy that caused the constitutional violation alleged. Blankenhorn v. City of Orange, 485 F.3d 463, 484 (9th Cir. 2007); Lee v. City of L.A., 250 F.3d 668, 681 (9th Cir. 2001).

Here, there remains a factual dispute as to whether Corporal Vianzon's use of the taser constituted excessive force. Given these factual disputes and that Corporal Vianzon was trained by Defendant County of San Diego, the Court concludes that triable issues of fact preclude granting Defendants' motion for summary judgment on Plaintiff's Monell claim. Accordingly, the Court denies Defendant's motion for summary judgment with respect to Plaintiff's Monell claim.

**C. Sheriff Gore**

Defendants argue that Sheriff Gore should be dismissed because he has no personal involvement and all claims in his official capacity are duplicative. (Doc. No. 52-1 at 28.) In response, Plaintiff maintains a claim against Sheriff Gore on the basis that he was "the final policymaker that exhibited the deliberate indifference" to the incident at issue in this case. (Doc. No. 61 at 24.) Plaintiff similarly argues, "[t]he Sheriff's Department has embraced what these deputies did." (Id.) Accordingly, Plaintiff appears to argue that Sheriff Gore, acting as the final policymaker, ratified the actions of the officers. The Court

concludes that Plaintiff has not provided evidence of affirmative or deliberate conduct by Sheriff Gore that amounts to a ratification of the officers' conduct.

With respect to Plaintiff's § 1983 claim, "[l]iability under section 1983 arises only upon a showing of personal participation by the defendant. . . . A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under section 1983." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted). Under a ratification theory, Plaintiff must provide evidence of affirmative or deliberate conduct by the policymaker that amounts to a ratification of the subordinate's conduct. See Gillette v. Delmore, 979 F.2d 1342, 1346–47 (9th Cir. 1992) (overturning the jury's finding that a city manager ratified a city employee's decision to fire the plaintiff because the plaintiff produced no evidence of "affirmative or deliberate" conduct by the city manager to ratify the employee's decision). The Ninth Circuit has explained, "Pembaur requires that an official policymaker make a deliberate choice from among various alternatives to follow a particular course of action [and] Praprotnik requires that a policymaker approve a subordinate's decision and the basis for it before the policymaker will be deemed to have ratified the subordinate's discretionary decision." Id. (citing Pembaur, 475 U.S. at 483-84 and Praprotnik, 485 U.S. 112).

With respect to Plaintiff's state law claims, "[a] chief of police is not liable in damages for the unlawful acts and omissions of the subordinates of the department unless he has directed such acts or personally cooperated." Oppenheimer v. City of Los Angeles, 104 Cal. App. 2d 545, 549 (1951).

Here, Plaintiff has not argued Sheriff Gore participated in or directed the alleged violations. Instead, Plaintiff appears to argue that Sheriff Gore, as an official policymaker, ratified the officers' conduct by failing to review the incident. (See Doc. No. 61 at 24.) However, Plaintiff has produced no evidence that the alleged failure to investigate the incident was an affirmative or deliberate choice by Sheriff Gore to ratify the officers' actions. See Celotex, 477 U.S. at 322 (holding rule 56 "mandates the entry of summary

judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Accordingly, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's claims against Sheriff Gore.

**D. Battery Claim and Bane Act Claim**

Plaintiff asserts a battery claim and a Bane Act claim. (Doc. No. 26 at ¶¶ 95–100, 114–123.) Under California law, the analysis of a battery claim against a law enforcement officer is the same as that for a plaintiff's excessive force claim. See Saman v. Robbins, 173 F.3d 1150, 1156 n.6 (9th Cir. 1999) ("[The plaintiff]'s battery claim must fail along with his § 1983 claim because we hold that no reasonable jury could have found that [the officer's] actions were objectively unreasonable under the circumstances."). The analysis of a Bane Act claim is also the same as that for a § 1983 excessive force claim. Cameron v. Craig, 713 F.3d 1012, 1022 (9th Cir. 2013).

The Court concludes that genuine issues of material fact remain on Plaintiff's battery and Bane Act claims against Corporal Vianzon. However, because the Court concludes that Deputy Perine could not have intervened under the circumstances for the purposes of Plaintiff's § 1983 excessive force claim, he is also entitled to summary judgment on the battery and Bane Act claims. Thus, the Court denies summary judgment as to Corporal Vianzon and grants summary judgment as to Deputy Perine with respect to Plaintiff's battery claim and Bane Act claim.

**E. Negligence Claim**

Defendants argue that because the officers' conduct was objectively reasonable with respect to Plaintiff's federal claim, Plaintiff's state law claim for negligence fails for the same reason. (Doc. No. 52-1 at 25.) Plaintiff concedes that they must prove their excessive force claims to have any other subsidiary claim based on any negligence theory. (Doc. No. 61 at 23.) The Court concludes above that genuine issues of material fact remain on the objective reasonableness of the uses of force by Corporal Vianzon and that Deputy Perine

14

could not have intervened under the circumstances. Therefore, the Court denies Defendants' motion for summary judgment as to Plaintiff's negligence claim against Corporal Vianzon and grants the motion for summary judgment on Plaintiff's negligence claim against Deputy Perine.

**F. Privileged Conduct under Cal. Gov. Code § 820.2**

Defendants argue that the Defendant officers are immune from liability for Plaintiff's state law claims pursuant to Cal. Gov. Code § 820.2. (Doc. No. 52-1 at 26.) California Government Code Section 820.2 "does not shield from liability government employees who use excessive force in carrying out their duties." Rodriguez v. Cty. of Los Angeles, 891 F.3d 776, 799 (9th Cir. 2018); see also Blankenhorn, 485 F.3d at 487 ("[I]t has long been established that [Cal. Gov. Code § 820.2] does not apply to officers who use unreasonable force in making an arrest."). Given that factual disputes remain concerning whether Corporal Vianzon's use of the taser against Adkins was unreasonable, the Court declines to grant summary judgment on the basis of Cal. Gov. Code § 820.2.

**G. Plaintiff's State Law Claims Against Defendant County of San Diego**

Defendants argue that, pursuant to Cal. Gov. Code § 815.2(b), Defendant County of San Diego cannot be held liable where the officers are immune from liability. (Doc. No. 52-1 at 27.) Given that the Court concludes above that genuine issues of material fact remain on the objective reasonableness of the uses of force by Corporal Vianzon which preclude granting him qualified immunity, Plaintiff can maintain a claim against Defendant County of San Diego. See Cal. Gov. Code § 815.2 ("A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative"). Accordingly, the Court denies Defendants' motion for summary judgment with respect to Plaintiff's state law claims against Defendant County of San Diego.

///

///

### H. Summary Adjudication Concerning First Tasings

Defendants request summary adjudication to establish that any tasings before Adkins was on the ground did not constitute excessive force. (Doc. No. 52-1 at 29–30.) Plaintiff argues that she has not sued on the first tasings, so there is no claim to rule upon. (Doc. No. 61 at 24.) Given that Plaintiff concedes that she has not sued on the first tasings and given that excessive force cases require an evaluation of the totality of the circumstances, the Court declines to grant summary adjudication as to the first tasings. See Mendez, 137 S. Ct. at 1546.

### **Conclusion**

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion for summary judgment. Specifically, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's claims against Deputy Perine and Sheriff Gore. The Court denies Defendants' motion for summary judgment with respect to Plaintiff's claims against Corporal Vianzon and Defendant County of San Diego, and the Court declines to grant summary adjudication as to the first tasings. The Court denies Plaintiff's motion for summary judgment.

**IT IS SO ORDERED.**

DATED: June 7, 2019

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT