THOMAS E. MONTGOMERY, County Counsel (State Bar No. 109654)
County of San Diego
By MELISSA M. HOLMES, Senior Deputy (State Bar No. 220961)
    ROBERT A. ORTIZ, Senior Deputy (State Bar No. 246849)
1600 Pacific Highway, Room 355
San Diego, California 92101-2469
Telephone: (619) 531-5836; Fax: (619) 531-6005
E-mail: melissa.holmes@sdcounty.ca.gov

Attorneys for Defendants County of San Diego and Armin Vianzon

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Estate of Mark Roshawn Adkins, by and through his successor-in-interest Collette Adkins; Collette Adkins individually and in her capacity as successor-in-interest, <br><br> Plaintiffs, <br><br> v. <br><br> County of San Diego; William Gore, individually and in his official capacity; SDCSD Corporal Armin Vianzon, individually and in his official capacity; SDCSD Deputy Jeffrey Perine, individually and in his official capacity; and Does 1-20 individually and in their official capacities, inclusive, <br><br> Defendants. | No. 18-cv-00371-H-MDD <br><br> DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACTS AND LAW <br><br> Dept.: 15A <br> Judge: Hon. Marilyn L. Huff <br> Trial Date: June 9, 2020 |

Pursuant to Civil Local Rule 16.1 and the Court's Order Scheduling Trial (ECF No. 80.), the County of San Diego and Armin Vianzon (collectively, "Defendants") submit the following Memorandum of Contentions of Fact and Law.

I.

# INTRODUCTION

Collette Adkins ("Plaintiff"), individually and as successor in interest to decedent Mark Adkins, brings claims against Defendants for: (1) excessive force in violation of the Fourth Amendment under 42 U.S.C. § 1983 ("Section 1983") against Deputy Vianzon; (2) *Monell* based on failure to train against the County; (3) battery against Deputy Vianzon; (4) negligence against both Defendants; and (5) the Bane Act, California Civil Code § 52.1, against both Defendants. Plaintiff's lawsuit is premised on Deputy Vianzon deploying his Taser on Mark Adkins ("Adkins") on April 20, 2017. Deputy Vianzon used objectively reasonable force to gain control of Adkins, who had significant quantities of methamphetamines, as well as PCP, in his system, was attempting to unlawfully enter condominium units on a Saturday morning, engaged in threatening and aggressive behavior, and refused to comply with repeated commands by deputies. Until he was restrained, Adkins posed a danger to the community, the deputies, and himself.

II.

# STATEMENT OF MATERIAL FACTS

On the morning of Saturday, April 20, 2017, Deputies Vianzon and Perine responded to a call that Adkins was trespassing at a condominium complex. The deputies learned that Adkins was scaling walls, sweating profusely, possibly under the influence of PCP, and was pulling on door handles (possible residential burglary) – it was unknown if Adkins was armed.

Adkins was standing in front of a condominium unit with a resident of the unit – the resident said he did not know Adkins and reported that Adkins had been "yanking on his door and he didn't know why." Defendants first attempted, without success, to communicate with Adkins to de-escalate the situation. Adkins continued to grunt, growl, flex his muscles, and open and close his fists. Perine told Adkins he was going to be detained and placed in handcuffs. Perine circled around Adkins and attempted to grab

one of Adkins' wrists to place him in handcuffs. Adkins displayed assaultive behavior – he used his wrist to shove Perine away exhibiting great strength.

Adkins was much larger than the deputies and they perceived that Adkins posed a threat to them. They were concerned for the safety of the residents of the homes, themselves, and Adkins based on his behavior and reported intoxication on PCP – they knew they would not fare well in hand-to-hand combat with him. Adkins ignored commands, continued to growl intensely, intermittently clenched his fists, and knelt down and assumed a leaping/charging position against Perine. Adkins then stood up and took a step towards Perine.

Adkins moved towards Perine and after giving verbal warnings, Perine deployed his first Taser cartridge at Adkins, which had no effect. Vianzon deployed his first Taser cartridge and Perine deployed his second, neither had the desired effect of causing neuromuscular incapacitation ("NMI"). Vianzon deployed his second Taser cartridge which caused Akins to tense up, go slowly back into the corner of a front porch, and eventually get on the ground with his hands below his stomach.

Once Adkins was on the ground, the deputies gave verbal commands for Adkins to give up his hands and turn on his stomach. Each time the deputies gave commands, Adkins struggled, pulled his hands away, and actively resisted efforts to handcuff him. Vianzon cycled his Taser multiple times but it did not have the desired effect of causing NMI. Because the Taser did not have the desired effect, Adkins was able to continue resisting even while being tased.

Other deputies arrived on scene and were able assist in gaining control of Adkins. Handcuffs and a leg restraint were applied. Adkins was placed in a recovery position on his side but continued to struggle.

Responding paramedics administered a shot of a medication to calm Adkins down five minutes after they arrived because he was still very violent. He was moved by the paramedics to an ambulance for transport and two minutes later, he became pulseless. Resuscitation efforts were successful but Adkins then suffered terminal cardiac arrest at

the hospital and died at 11:40 a.m. that morning.  An autopsy was performed after Adkins' death and a small plastic baggie was found lodged in the back of his throat. Adkins had lethal levels of methamphetamines in his system, in addition to PCP.  Adkins was in the end stages of a severe methamphetamine overdose at the time of his encounter with the deputies and he was going to die from the overdose whether or not he encountered the deputies.  Adkins death was caused by the fatal amount of drugs he consumed and an existing heart condition that resulted from his long-term methamphetamine use.

The County trains deputies before they are assigned a Taser.  Deputies that carry a Taser must complete a certification course in addition to training in the police academy.

### III.
### LEGAL CONTENTIONS

**A. Fourth Amendment Excessive Force Against Vianzon**

Excessive force claims asserted pursuant to Section 1983 against deputies are analyzed under the Fourth Amendment's objective reasonableness standard.  *Graham v. Connor*, 490 U.S. 386, 388, 394 (1989).  Under the Fourth Amendment, a police officer may only use such force as is "objectively reasonable" under the circumstances. *See Kingsley v. Hendrickson,* 135 S.Ct. 2466, 2473 (2015).  "Determining whether the force used is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham,* 490 U.S. at 396. This balancing test entails consideration of the totality of the facts and circumstances in the particular case.  *Id*.  Relevant factors in the reasonableness inquiry include "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*.

The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of

- 4 -

No. 18cv00371-H-MDD

hindsight. The calculus of reasonableness must allow for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation. *Id*. at 396-97. The analysis begins with the "most important single element of the three specified factors: whether the suspect poses an immediate threat to the safety of the officers or others." *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005).

Law enforcement have a degree of discretion as to how they choose to address a particular situation. The reasonableness of the deputies' conduct should not be considered in isolation; rather, it should be considered as part of the totality of circumstances.

> We perceive no sound reason to divide plaintiff's cause of action artificially into a series of decisional moments (the two deputies' decision not to call for a psychiatric expert before entering Shane's house, their decision to enter the house, their decision to speak to [decedent], their decision to use deadly force in response to [decedent's] apparently threatening behavior toward them with a large knife, etc.), and then to permit plaintiff to litigate each decision in isolation, when each is part of a continuum of circumstances surrounding a single use of deadly force by the deputies. Any other approach would be both inefficient and confusing, and would conflict with our past decisions on negligence.

*Hayes,* 57 Cal.4th at 637-38. Courts may not use perfect hindsight to second-guess what the deputies could have done differently, even when considering alternative methods. *Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994).

Vianzon's use of the Taser was objectively reasonable in light of the threat Adkins posed and the deputies need to safely gain control of him. Here, the deputies responded to a call of an individual scaling walls, sweating profusely, possibly under the influence of PCP, and who was trying to unlawfully gain access to residences. They reasonably believed that they were responding to a dangerous home invasion situation because Adkins was trying to get into residences on a Saturday morning – a time when people are typically home. Upon arrival, they observed Adkins, who matched the description of the suspect, sweating profusely, grunting, breathing heavily, and clenching his fists repeatedly and were told by a resident that Adkins had been "yanking on his door and he

didn't know why." The deputies attempted to de-escalate the situation with communication, to no avail. Adkins displayed assaultive behavior when Perine attempted to employ soft-hand techniques and Adkins physically resisted and moved towards the deputies in a threatening manner. Deputies deployed their Tasers to subdue Adkins. The deputies considered using other less lethal force options against Adkins but did not believe any were viable and wanted to avoid deadly force.

### B. Vianzon is Entitled to Qualified Immunity

Law enforcement officers are entitled to qualified immunity from excessive force claims if they were operating under the mistaken belief that their use of force was permissible. *Saucier v. Katz*, 533 U.S. 194, 206 (2001). Qualified immunity protects officers from claims based on their conduct in situations requiring the exercise of discretion. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). No Taser case places the constitutionality of Vianzon's actions "beyond debate." The deputies encountered an aggressive felony suspect, who refused to comply with repeated commands, who demonstrated assaultive behavior and continued to create a danger by his refusal to follow commands, who was resistant to pain because of intoxication, and who the deputies thought was able to physically overpower them in the confined space. With respect to the number of Taser deployments and cycles utilized by the deputies to secure Adkins, there is no clearly established law that constitutionally prevents law enforcement officers from continuing to cycle their Tasers in dart mode when prior Taser deployments are ineffective, did not cause NMI, and the suspect is continuing to resist. There were no other viable force options available. Plaintiffs cannot allege robust and controlling precedent as of May 20, 2017 that refute the application of qualified immunity.

### C. Battery as to Vianzon

A state tort claim for battery against a peace officer, the plaintiff must prove facts showing that the officer used unreasonable force. *Edson v. City of Anaheim*, 63

1 Cal.App.4th 1269, 1273 (1998). The same "objectively reasonable" standard used to
2 analyze excessive force claims under the Fourth Amendment applies to a plaintiff's state
3 tort battery claim. *See Martinez v. County of Los Angeles*, 47 Cal.App.4th 334, 349
4 (1996). Because Vianzon's use of force was objectively reasonable, Plaintiff's battery
5 claim fails.

### D. Negligence Against Vianzon and the County

"Negligence claims stemming from allegations of excessive force by a police officer are . . . analyzed under the Fourth Amendment's reasonableness standard." *Carter v. City of Carlsbad,* 799 F.Supp.2d 1147, 1164 (S.D. Cal. 2011). Thus, in order to succeed on her negligence claim, Plaintiff "must show that [Deputy Vianzon] acted unreasonably and that the unreasonable behavior harmed her." *Price v. Cnty. of San Diego,* 990 F.Supp. 1230, 1245 (S.D. Cal. 1998). Again, Deputy Vianzon's actions were objectively reasonable so Plaintiff's negligence claim against him and the County fails.

### E. *Monell* Against the County Based on Failure to Train

Defendants moved for summary judgment on Plaintiff's *Monell* claims based on deficient policy (*Monell*) and failure to train (*Canton*). The Court ruled that the *Monell* claim survived summary judgment based on the County's training of Vianzon. (ECF No. 74 at 12:16-19.)

In limited circumstances municipal civil rights liability may be predicated on a "failure to train" employees adequately. *See City of Canton*, 489 U.S. 378, 387 (1989). Such a claim requires: (1) the training program must be inadequate in relation to the tasks the particular employees must perform; (2) the officials must have been deliberately indifferent to the rights of persons with whom the [local officials] come into contact; and (3) the inadequacy of the training must be shown to have actually caused the constitutional deprivation at issue. *Merritt v. Cty. of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

"Deliberate indifference is a stringent standard of fault requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick,* 563 U.S. at 61.  A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference' for purposes of failure to train." *Id*.  Finally, "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the [municipality] liable." *Canton,* 489 U.S. at 391.

The Supreme Court decisions in *Canton, Bryan County,* and *Connick* did not provide that merely listing past events is sufficient to support a claim that a municipal federal civil rights violation by an employee was caused by an inadequate program.  Rather those cases require occurrence of a pattern of constitutional violations.  A constitutional violation does not exist by virtue of an accusation or allegation.  Rather, it must be an adjudicated fact.  Municipal liability under Section 1983 "generally implies a course of action consciously chosen from among various alternatives" and is not established by "[p]roof of a single incident of unconstitutional activity . . . unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985).

Here, Deputy Vianzon was trained to use the Taser.  Plaintiff will be unable to present evidence of a failure to train or deliberate indifference on behalf of the County.

**F. Bane Act (Civ. Code § 52.1) Claim Against Vianzon and the County**

California Civil Code section 52.1, also known as the Bane Act, creates a private cause of action for any "individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States . . . has been interfered with" by "a person or persons" using "threat, intimidation, or coercion . . . ." Civ. Code § 51.2(a), (b).  In summary, two elements are required to state a Bane Act claim: "(1) intentional interference or attempted interference with a state or federal constitutional or legal right; and (2) the interference or attempted interference was by threats, intimidation or

coercion." *McFarland v. City of Clovis*, 163 F.Supp.3d 798, 806 (E.D. Cal. 2016). While excessive force is sufficient to establish coercion, Plaintiffs also do not allege sufficient facts that the County Defendants had the specific intent necessary to maintain a Bane Act violation. *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018) ("the jury must find that the defendants 'intended not only the force, but its unreasonableness, its character as 'more than necessary under the circumstances.'")

Here, Plaintiff cannot establish that Deputy Vianzon had the necessary intent to support a Bane Act violation.

**G. Punitive Damages Bifurcated**

Defendants filed a motion to bifurcate the trial and separate the issues of *Monell* liability and punitive damages into a second phase. (ECF No. 78.) The Court ruled that a "separate phase of trial will proceed before the same jury, solely to determine the amount of punitive damages, if any, absent further order from the court." (ECF No. 83 at 3:4-6.)

## IV.
## ABANDONED ISSUES

The Court granted Defendants' motion for summary judgment in part. (ECF No. 74.) All claims against Sheriff Gore and Perine were disposed of on summary judgment. Plaintiff concedes that she is not seeking to recover for the first Taser deployment by Deputy Vianzon. Only the second deployment and subsequent Taser cycles by Deputy Vianzon after Adkins was on the ground are at issue. (ECF No. 74 at 16:1-8; ECF No. 61 at 20:7-19.) Plaintiff also pled a negligent training claim (Seventh Claim for Relief), that was limited by the Court to Sheriff Gore and Doe Defendants. (ECF No. 13 at 13:2-7.) Because Sheriff Gore is no longer a party and no Doe Defendants were named, the claim no longer remains.

///
///
///
///

# V.

# **EXHIBITS AND WITNESSES**

Defendants' witnesses and exhibits are set forth in Defendants' pretrial disclosures and will be filed pursuant to the Court's Order Scheduling Trial. (ECF No. 80.)

DATED: November 12, 2019        THOMAS E. MONTGOMERY, County Counsel

By: s/MELISSA HOLMES, Senior Deputy
Attorneys for Defendants County of San Diego and Armin Vianzon
E-mail: melissa.holmes@sdcounty.ca.gov